# Exhibit A

**IRA HELLER LAW, LLC**
**1282 North Broad Street**
**Hillside, New Jersey 07205**
**(908) 275-8626**
**Fax: (908) 349-3005**
**iwhelleresq@gmail.com**
**Ira W. Heller, Esq. - ID #001682011**
*Attorney(s) for Plaintiff*

_____X

| | |
|---|---|
| **LIGHTNING FUNDING, LLC** | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION - CIVIL PART |
| Plaintiff, | UNION COUNTY |
| | |
| -vs- | DOCKET NO.: |
| | |
| **MARKEL CORPORATION, together with subsidiaries EVANSTON INSURANCE COMPANY, ESSEX INSURANCE COMPANY and MSW ADJUSTMENT GROUP, INC.** | CIVIL ACTION |
| | *SUMMONS* |
| Defendants. | |

_____X

From The State of New Jersey To The Defendant(s) Named Above:

     The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciamstate.nj.us/prose/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

     If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

   If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

Dated: January 30, 2019

*Michelle M. Smith, Esq*

                   **_____**
                   **Michelle M. Smith, Esq.**, Superior Court Clerk

*Name of Party to be Served:*
Markel Corporation
535 Springfield Avenue
Summit, NJ 07901

**IRA HELLER LAW, LLC**
**1282 North Broad Street**
**Hillside, New Jersey 07205**
**(908) 275-8626**
**Fax: (908) 349-3005**
**iwhelleresq@gmail.com**
**Ira W. Heller, Esq. - ID #001682011**
*Attorney(s) for Plaintiff*

_____X

| | |
|---|---|
| **LIGHTNING FUNDING, LLC** | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION - CIVIL PART |
| Plaintiff, | UNION COUNTY |
| | |
| -vs- | DOCKET NO.: |
| | |
| **MARKEL CORPORATION, together with subsidiaries EVANSTON INSURANCE COMPANY, ESSEX INSURANCE COMPANY and MSW ADJUSTMENT GROUP, INC.** | CIVIL ACTION |
| | *COMPLAINT* |
| Defendants. | |

_____X

Plaintiff, LIGHTNING FUNDING, LLC, ("Plaintiff"), with address at 18 Route 22 East, Hillside, NJ 07205, by way of Complaint against the Defendant, MARKEL CORPORATION, and against its subsidiaries, EVANSTON INSURANCE COMPANY, and MSW ADJUSTMENT GROUP, INC., states as follows:

1. Plaintiff, Lightening Funding, LLC ("Lightning Funding" or "Plaintiff") is a Limited Liability Company, formed in New Jersey on June 6, 2008. Lightning Funding engages primarily in land and real estate development in New Jersey.

2. Defendant, Markel Corporation ("Markel Claims"), is a holding company for insurance, reinsurance, and investment operations, holding 77 offices in 20 Countries worldwide. Among the office locations is the Markel Office in New Jersey, located at 535 Springfield Avenue, in the town of Summit, 07901.

3. Markel Claims works via several subsidiaries, added to this claim as Parties as follows:

    a. Evanston Insurance Company, a subsidiary of Markel Claims, is a company engaged in the sale of insurance, with a main office in Deerfield, Illinois.

    b. Essex Insurance Company, a subsidiary of Markel Claims, is a company engaged in the sale of insurance, with a main office in 4521 Highwoods Pkwy, Glen Allen, Virginia.

    c. MSW Adjustment Group, Inc., a land inspection company who was contracted by Markel Claims to provide a property assessment, has an office location at 7 Waverly Place, Madison, NJ 07940

4. Jurisdiction over Evanston Insurance Company and Evanston Insurance Company should be presumed obtained by virtue of their acting as subsidiaries to Markel Corporation, who has a permanent presence in New Jersey, and actively do business in New Jersey.

## BACKGROUND

5. Lightning Funding, LLC ("Plaintiff") purchased the building located at 1008 Clinton Avenue ("the building") on or about February 25, 2010.

6. At that time, the building was unoccupied, and thus required an inspection with photographs to confirm that the building met the criteria of insurability by the insurance company. The Defendant contracted with the Plaintiff on February 25, 2010 to insure the Plaintiff's building, and an inspection with photographs were ordered and paid for by the Plaintiff. Shortly thereafter, another inspection was performed by Defendant's inspector and the policy was issued. The policy was issued by Defendant WITHOUT ANY RESTRICTONS with the building unoccupied at that time, and empty of any contents.

7. Defendant issued an insurance policy for Plaintiff's building beginning on February 25, 2010 for which Plaintiff paid $3085.00 for 2010, $2,777.50 in 2011, $2,777.50 in 2012, $3,040.00 in 2013, $3,090.00 in 2014, $3,300.00 in 2015, and $3,300 in 2016. Plaintiff's building was consistently insured by Defendant's insurance company until the time of the loss WITHOUT INTERRUPTION.

8. The prior owner of 1008 Clinton Avenue performed extensive renovations to the buildings during the period of July 2, 2008 to October 4, 2009, including, but not limited to, securing the premises with stronger doors, installing new windows, refinished the floors in the commercial area as well as the upstairs apartments, replaced the toilets and sinks, spackled and painted the walls, etc. These renovations were performed with the intention of improving the building's appearance, and enhance its marketability.

9. On or about November 29, 2017, it was discovered by the Plaintiff that the building was leaning, and a voluminous amount of trash, construction material and other debris were impermissibly deposited in the building. The rear door and multiple new windows were removed and stolen.

10. Plaintiff was in touch with Harvey Goodman, AIC, a claims examiner for Markel Claims, regarding the situation. At the request of Mr. Goodman, Plaintiff hired Zen Architecture, LLC ("Zen Architecture") to conduct an inspection in order to assess the damage at the subject property.

11. In January of 2018, Plaintiff arranged for an inspection of the building by Zen Architecture, and on January 18, 2018, received a letter from the inspector stating his assessment that the building was no longer structurally sound, and needed to be demolished. Plaintiff

3

forwarded this letter to Defendant, thus alerting the company to the fact that he had suffered a loss and would thus be filing an insurance claim to recover for his loss.

12. Upon review of the letter, Mr. Goodman put Plaintiff in touch with Glen Walker, Partner at MSW Claims. Mr. Walker told Plaintiff that he would be conducting his own investigation of the subject property before issuing a decision regarding the claim.

13. On April 17, 2018, Glen Walker told the Plaintiff that he had completed his investigation and that his visual inspection found the building to be in the same "leaning" condition as per a 2017 inspection. Plaintiff requested a copy of Glen Walker's report regarding his investigation as well as a copy of the 2017 inspection report that Mr. Walker was referencing in his later report. Mr. Walker refused to supply either report and refused to identify who issued the report in 2017 until Plaintiff agreed to submit a "signed waiver." Plaintiff questioned Mr. Walker as to why he had to sign a waiver in order to receive a copy of the report, but Mr. Walker refused to provide an answer.

14. Moving forward, Defendant retained MSW Construction Group, LLC, on May 1, 2018 to inspect the building. Plaintiff met the inspector, Mr. Daniel S. Davies ("Mr. Davies" or "inspector") at the subject property and Mr. Davies merely conducted a visual inspection, because as he stated, he couldn't walk more than three steps into the building due to the massive debris. On May 18, 2018, the inspector, Mr. Davies issued a report in which he attempted to explain the state of the building. However, Mr. Davies' report was fraught with numerous contradictions and misstatements, clearly in furtherance of his predetermined agenda of justifying a denial of Plaintiff's insurance claim.

15. The inspector's report was fraught with blaring misstatements, some examples of which I cite below:

4

a. Inspector states that the objective of the investigation was to offer an opinion of the cause of the "cracks in the garage and exterior stucco." This is patently false, as at no time was there ever a discussion about an inspector going in for this purpose, but rather, the entire purpose of hiring the inspector was the leaning condition of the building.

b. Inspector stated in his report that "the upper floors do not have windows" and that the "rear door was open." Inspector, therefore, in mentioning these facts, insinuates that these facts were due to failure of Plaintiff to care for the premises, when in fact, these were the result of recent vandalism rather than deficient duty of care. As earlier stated, the prior owner had installed new windows, which were stolen, and the back door was open because it had been pried open by vandals, who were responsible for dumping the debris. Inspector's report blatantly ignored these facts (despite the fact that they had been previously reported to the insurance company), and as a result, stated completely wrongful conclusions in the report.

c. Inspector blames Plaintiff for "lack of maintenance," without any seeming knowledge or acknowledgment of the fact that in excess of $100,000 had been invested to renovate the building, which was virtually destroyed by vandals who broke into the b.

d. Inspector references a Google Maps photo to state that the building was observed to be leaning in 2012, in support of his assessment. If this was the case, then the burden must fall upon Defendant to explain why they reinsured

5

the building and accepted Plaintiff's insurance premiums, year after year since that time.

e. Inspector openly admits that he did not access the basement or the upper floors, rendering his inspection of the building incomplete. His visual inspection was limited to taking three steps into the rear of the building. Further access was restricted due to the massive debris which blocked both the stairway to the upstairs apartments as well as the stairway to the basement. The inspector had no access to the front of the building. Inspector attributes the state of the structure to "exposure to the elements," but had absolutely no facts to support this assessment. Specifically, the inspector had no idea as to how long the building had been exposed, nor did he have any knowledge with regard to when the vandalism occurred.

16. For these and other numerous reasons that will be further stated in the course of the matter, Defendant wrongfully rejected Plaintiff's insurance claim, and stated no valid reason for its denial.

17. Subsequent to denying Plaintiff's claim, Defendant offered Plaintiff the opportunity to avail himself of their "internal appeals process," which Plaintiff did. Not surprisingly, Defendant rejected Plaintiff's appeal, still without stating any valid basis for their wholesale denial of Plaintiff's claim.

## **FIRST COUNT: BREACH OF CONTRACT**

18. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "16" with the same force and effect as though fully set forth at length herein.

19. Plaintiff entered into a viable and enforceable contract with Defendant to insure

6

his building at 1008 Clinton Avenue.

20. Valid consideration was exchanged for such contract, which was renewed every year subsequently in order to provide insurance for Plaintiff's building in the event of a loss.

21. Plaintiff suffered a loss when multiple inspectors determined that the building was no longer viable, and would thus need to be demolished.

22. Defendant subsequently refused to compensate Plaintiff for his loss, despite the fact that Plaintiff was clearly covered for the loss under the insurance contract between the Parties.

23. Notwithstanding the above, Defendant skewed and ignore the facts in order to avoid compensating Plaintiff for his loss for which he was contractually insured. Even after Plaintiff clearly pointed out Defendant's errors and omissions in an appeal submitted under the Defendant's "internal appeals process," they persisted in their unjustified denial of Plaintiff's claim.

24. Accordingly, Defendant is in blatant breach of the terms of their contract with Plaintiff to insure his building, and must be held liable to compensate Plaintiff for his loss, plus the costs of pursuing this action.

## SECOND COUNT: BAD FAITH

25. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "23" with the same force and effect as though fully set forth at length herein.

26. New Jersey law has established clear standards for insurance companies, requiring good faith dealing with their customers in settling their insurance claims (see *Rova Farms Resort v. Investors Ins. Co.,* 323 A. 2d 495 – NJ: Supreme Court 1974)

27. Nevertheless, Defendant chose to deal in bad faith, despite the fact that Plaintiff's

claim was clearly viable and justified, Defendant nonetheless breached its responsibility by producing inspection reports that evaded and skewed the facts, and on that basis, denied Plaintiff's claim.

28. Defendant then doubled down on the evasion of its responsibility in denying Plaintiff's appeal, citing no viable reason for the denial, thus showing repeated bad faith.

29. Defendant clearly gambled on the prospect that Plaintiff would not pursue legal action, due to the effort and expense involved. Nevertheless, Plaintiff has done so, and should be additionally compensated by Defendant for his expenses, which are solely attributable to Defendant's shameless bad faith.

**JUDGMENT IS DEMANDED THEREFOR** in the amount of $100,000 for the purchase price of the building, together with damages, costs, interest and legal fees. Plaintiff waves any amount in excess of the jurisdictional limits.

**I CERTIFY** that the dispute about which I am suing is not the subject of any other action pending in any other court or a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

The Plaintiff demands trial by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

Dated: February 12, 2019

_____
Ira W. Heller, Esq.
*Attorney for Plaintiff*

9

# Civil Case Information Statement

## Case Details: UNION | Civil Part Docket# L-000585-19

**Case Caption:** LIGHTNING FUNDING, L LC  VS MARKEL CORPORATION
**Case Initiation Date:** 02/13/2019
**Attorney Name:** IRA W HELLER
**Firm Name:** IRA HELLER LAW
**Address:** 1282 NORTH BROAD ST HILLSIDE NJ 07205
**Phone:**
**Name of Party:** PLAINTIFF : Lightning Funding, LLC
**Name of Defendant's Primary Insurance Company (if known):** Unknown

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Hurricane Sandy related?** NO
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/13/2019                                                                                                /s/ IRA W HELLER
Dated                                                                                                     Signed